## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HT S.R.L.,<br><br>               Petitioner,<br><br>     v.<br><br>LUIS ALEJANDRO VELASCO,<br><br>               Respondent. | Misc. Action No. 1:15-mc-00664-RBW-AK<br><br><br><br>             Related to:<br>Case No. 15-mc-00177 (D. Md.) |

## <u>MEMORANDUM OPINION</u>

Pending before the Court are Petitioner's *Amended Motion to Compel Luis Alejandro Velasco to Comply with Properly-Served Subpoena and Incorporated Memorandum of Law* ("Am. Mot. to Compel") [3]; Respondent's *Memorandum in Opposition to Petitioner's Motion to Compel and in Support of Mr. Velasco's Motion to Quash* ("Opp'n to Am. Mot. to Compel") [4]; Respondent's *Motion to Quash Subpoena* ("Mot. to Quash") [5]; Petitioner's *Reply in Support of Amended Motion to Compel Luis Alejandro Velasco to Comply with Properly-Served Subpoena and Incorporated Memorandum of Law* ("Reply in Supp. of Am. Mot. to Compel") [6]; *Petitioner HT S.R.L.'s Memorandum in Opposition to Respondent's Motion to Quash Subpoena* ("Opp'n to Mot. to Quash") [9]; and Respondent's *Reply in Support of Respondent Luis Alejandro Velasco's Motion to Quash Subpoena* ("Reply in Supp. of Mot. to Quash") [10]. The Amended Motion to Compel was referred to the undersigned for a resolution. (Order [7]; Referral to Magistrate Judge [8]). For the reasons set forth in this Memorandum Opinion, the Court grants in part and denies in part Petitioner's Amended Motion to Compel and denies Respondent's Motion to Quash.

# I.   <u>BACKGROUND</u>

HT S.R.L. ("Petitioner") is an Italian limited liability company with a registered office in Milan, Italy that "provides consultancy and management services for information technology security." (Am. Mot. to Compel 1, Ex. 1B Declaration of Roberto Glavio Tirone ("Tirone Decl.") [3-1] 25 at ¶ 3, Ex. 1C ("Agreement") [3-1] 32). Petitioner's software product, Galileo Remote Control System ("RCS"), allows "undetected monitoring of computer activities[.]" (Am. Mot. to Compel 3; Agreement 32). On March 1, 2012, Petitioner entered into a consultant agreement ("Agreement") with Luis Alejandro Velasco ("Respondent"), who is self-employed and lives and works in Annapolis, Maryland. (Opp'n to Am. Mot. to Compel 1, 3; Agreement 2).

The Agreement assigns various responsibilities to Respondent, including promoting RCS and Petitioner. (Am. Mot. to Compel 3; Tirone Decl. ¶ 5; Agreement ¶¶ 1.1-1.7). In exchange for Respondent's work as Petitioner's "U.S. marketing consultant and technical assistant," Petitioner compensated Respondent $80,000 each year. (Opp'n to Mot. to Quash 1; Agreement ¶ 4.1). Petitioner drafted the Agreement, which includes a non-compete clause and a confidentiality clause prohibiting Respondent from disclosing confidential information regarding Petitioner's products "for the entire duration of [the Agreement] and for a period of one year starting from the termination of [the Agreement.]" (Opp'n to Am. Mot. to Compel 1; Am. Mot. to Compel 3-4; Tirone Decl. ¶ 7; Agreement ¶¶ 5.1, 6.1). The Agreement also contains a choice of law clause mandating Italian law governs the Agreement and a choice of forum clause requiring the Court of Milan has exclusive jurisdiction over "any disputes relating to the interpretation or execution of the [Agreement.]" (Agreement ¶¶ 12.1, 12.2; Opp'n to Am. Mot. to Compel 1).

On March 17, 2015, Petitioner brought a civil suit ("Italian Proceeding") against Respondent in the Court of Milan, Italy ("Court of Milan") alleging Respondent violated the non-

compete clause of the Agreement. (Am. Mot. to Compel 1, 4, Ex. 1D ("Italian Complaint") [3-1] 39-64; Tirone Decl. ¶ 9). The Italian Complaint alleges that Respondent represented competitors and collaborated in developing, marketed, and sold a competitor's software while under contract with Petitioner, thus violating the Agreement.[1] (Am. Mot. to Compel 4; Tirone Decl. ¶¶ 10-14). On April 10, 2015, Petitioner filed an *ex parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding in the United States District Court for the District of Maryland. (Am. Mot. to Compel Ex. 1 ("Application") [3-1] 2-23). The proposed subpoena commanding Respondent to testify at a deposition and produce documents was attached. (Am. Mot. to Compel Ex. 1A [3-1] 12-23). On April 17, 2015, the Honorable J. Frederick Motz granted the Application, authorizing the issuance of the subpoena. (Am. Mot. to Compel Ex. 2 ("Order") [3-2]).

On April 20, 2015, Petitioner issued the subpoena, commanding Respondent to testify at a deposition on May 11, 2015 at 10:00 a.m. at Petitioner's counsel's office in Washington, D.C. and produce documents at the deposition.[2] (Am. Mot. to Compel Ex. 3 ("Subpoena") [3-3]). Respondent was served on April 23, 2015. (Am. Mot. to Compel Ex. 4 ("Affidavit of Service") [3-4]). On May 5, 2015, Respondent personally called Petitioner and requested to reschedule the deposition due to a family graduation requiring his attendance. (Am. Mot. to Compel 5; Opp'n to Am. Mot. to Compel 3). That afternoon, Respondent personally e-mailed Petitioner acknowledging the acceptance of his request to reschedule and agreeing to appear for his

---

[1] The Italian Complaint alleges that Respondent "associated himself" with Petitioner's competitors Newco404 LLC and Reaqta Ltd. (Am. Mot. to Compel 4; Tirone Decl. ¶¶ 10, 11). Newco404 LLC sells products that directly compete with Petitioner's products. (Tirone Decl. ¶ 10). Reaqta Ltd. produces a "software product designed to neutralize [Petitioner's] product." (Am. Mot. to Compel 4; Tirone Decl. ¶ 11). Allegedly, Respondent "presented and marketed the Reaqta software, on multiple occasions" to Petitioner's prospective client who was interested in purchasing Petitioner's software. (Am. Mot. to Compel 4; Tirone Decl. ¶ 12). Respondent allegedly allowed Newco404 LLC and Reaqta Ltd.'s executives to participate in meetings with Petitioner's prospective clients. (Am. Mot. to Compel 4; Tirone Decl. ¶¶ 12, 13).

[2] The Subpoena is captioned with the United States District Court for the District of Maryland. (Subpoena 2).

deposition on May 21, 2015 (Am. Mot. to Compel Ex. 5 [3-5], Ex. 11 [3-11]; Opp'n to Am. Mot. to Compel Ex. D [4-1] 23). Petitioner responded that evening accepting the request to reschedule and informing Respondent he was still obligated to produce documents by the date set forth in the Subpoena, May 11, 2015. (Am. Mot. to Compel Ex. 11; Opp'n to Am. Mot. to Compel Ex. D). On May 6, 2015, Respondent replied that he also needed additional time for the production and objected pursuant to Fed. R. Civ. P. 45(d)(2)(B) that the document "request is questionable and overly broad and overly burdensome."[3] (Am. Mot. to Compel Ex. 11; Opp'n to Am. Mot. to Compel Ex. D).

Respondent retained counsel on May 11, 2015 and she assumed responsibility of communicating with Petitioner. (Opp'n to Am. Mot. to Compel 3). Respondent served correspondence on May 15, 2015, elaborating on his objections and explaining why the discovery was improper. (Am. Mot. to Compel Ex. 6 [3-6]; Opp'n to Am. Mot. to Compel 3 Ex. E [4-1] 25-27). On May 19, 2015, the parties exchanged a series of e-mails. (Am. Mot. to Compel 6; Opp'n to Am. Mot. to Compel 3-4). Petitioner explained that the objections were untimely pursuant to Fed. R. Civ. P. 45(d)(2)(B), offered to accommodate Respondent by deposing him in Annapolis, Maryland, and proposed a meet and confer half an hour before the deposition. (Am. Mot. to Compel Ex. 7 [3-7]; Opp'n to Am. Mot. to Compel 3 Ex. F [4-1] 29-30). Petitioner also warned that if Respondent failed to appear for his deposition, Petitioner would file a motion to compel and move for attorneys' fees and costs. (Am. Mot. to Compel Ex. 7; Opp'n to Am. Mot. to Compel 3, Ex. F 30). Respondent replied, disagreeing with Petitioner's position on timeliness of the

---

[3] Petitioner failed to disclose that Respondent raised objections on May 6, 2015 in his original Motion to Compel Compliance with the Subpoena ("Motion to Compel" [1]). (Am. Mot. to Compel 2, n.1). Instead, Petitioner identified Respondent's May 5, 2015 e-mail agreeing to appear for his deposition and indicated that after the e-mail, "HT did not receive any further communications from Mr. Velasco or anyone acting on his behalf until May 15, 2015." (Mot. to Compel 5).

objections and indicating a new subpoena would be required if the location of the deposition changed. (Am. Mot. to Compel Ex. 8 [3-8]). Petitioner responded that the deposition would go forward in the District of Columbia as set forth in the Subpoena and reiterated availability to meet and confer before the deposition. (Am. Mot. to Compel Ex. 9 [3-9]). Respondent replied that Respondent would not appear for the deposition and counsel was open to discussing the discovery Petitioner sought. (Am. Mot. to Compel Ex. 10 [3-10]; Opp'n to Am. Mot. to Compel 3, Ex. G [4-1] 34).

On May 20, 2015, the parties exchanged e-mails and scheduled a telephonic meet and confer. (Opp'n to Am. Mot. to Compel 3 Ex. G 32-33). Respondent did not appear for his deposition on May 21, 2015 or produce the documents requested in the Subpoena. (Am. Mot. to Compel 6). At about 2:00 p.m. on May 21, 2015, the parties had a telephonic meet and confer but were unable to resolve their dispute. (Am. Mot. to Compel 6). Respondent proposed two alternatives to the Subpoena: (1) waiting to see whether the Court of Milan ordered discovery or (2) both parties "agree to engage in discovery beyond what is available under Italian law, to allow Mr. Velasco to similarly issue document requests to HT and take depositions of key HT employees." (Opp'n to Am. Mot. to Compel 4 Ex. H [4-1] 39).

The following day, Petitioner filed a Motion to Compel Compliance with the Subpoena.[4] Respondent notified Petitioner that the Motion to Compel contained "demonstrably false statements" because Petitioner failed to disclose the fact that Respondent personally objected to the document request on May 6, 2015. (Opp'n to Am. Mot. to Compel Ex. I [4-1] 41-42).[5]

---

[4] Petitioner filed the Motion to Compel in this Court instead of the District Court of Maryland because the Subpoena states that compliance is required in the District of Columbia and a motion to compel compliance must be filed in "the court for the district where compliance is required[.]" (Subpoena 2); Fed. R. Civ. P. 45(d)(2)(B)(i).

[5] The Court notes that Petitioner's original Motion to Compel "falsely stated" Respondent failed to object within fourteen days of service pursuant to Fed. R. Civ. P. 45. (Opp'n to Am. Mot. to Compel 5; Am. Mot. to Compel 2 n.3). Petitioner filed the Amended Motion to Compel after receiving Respondent's correspondence informing Petitioner of this error. (Opp'n to Am. Mot. to Compel 5, Ex. I).

Petitioner then filed the instant Amended Motion to Compel requesting an order (1) directing Respondent to produce all documents requested in the Subpoena, (2) establishing a date for Respondent to provide deposition testimony and (3) instructing Respondent to pay Petitioner's costs, including attorneys' fees, related to compelling Respondent's compliance with the Subpoena. (Am. Mot. to Compel 2). Respondent filed a Motion to Quash requesting attorneys' fees and costs incurred as a result of the Subpoena and Motion to Compel. (Mot. to Quash). This Court held a hearing on both motions on August 10, 2015.

## II.    <u>LEGAL STANDARD</u>

### A.  <u>Compelling Compliance with a Subpoena</u>

Pursuant to Fed. R. Civ. P. 45 (d)(2)(B), a party receiving a subpoena to produce documents or tangible things may object to the subpoena "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Upon receiving objections, the serving party may then move the court for an order compelling production after noticing the commanded party. *Id.* The motion must be filed in "the court for the district where compliance is required[.]" Fed. R. Civ. P. 45(d)(2)(B)(i).

### B.  <u>Enforcing a Subpoena Issued Pursuant to 28 U.S.C. §1782(a)</u>

Pursuant to 28 U.S.C. § 1782(a), a district court has discretion to "order [a person residing in its district] to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal[.]" This statute authorizes a broad scope for federal courts to assist foreign proceedings, but it does not require discovery assistance. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247-48, 264 (2004) (citing 28 U.S.C. § 1782(a)) (noting that the 1948 amendments to 28 U.S.C. § 1782(a) "substantially broadened the scope of assistance"). Thus, the court must first determine whether it has the authority to permit

or enforce the request and then whether it should exercise its discretion to permit or enforce the request. *See Lazaridis v. Int'l Ctr. for Missing & Exploited Children, Inc.*, 760 F. Supp. 2d 109, 112 (D.D.C. 2011) (citing *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 49 (D.D.C. 2005)).

### C.  Quashing a Subpoena

Pursuant to Fed. R. Civ. P. 45 (d)(3), the court where compliance is required may quash or modify a subpoena. If the commanding party "timely" moves the court, the court "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45 (d)(3)(A). Quashing or modifying a subpoena is permitted when a subpoena requires "(i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45 (d)(3)(B).

## III.  ANALYSIS

Petitioner argues that this Court should compel Respondent to comply with the Subpoena. (Am. Mot. to Compel 7). First, Judge Motz of the District Court of Maryland reviewed the relevant issues set forth in the Application; Judge Motz granted the Application, authorizing the issuance of the Subpoena; and Respondent subsequently agreed to appear at his deposition. (Am. Mot. to Compel 7; Reply in Supp. of Am. Mot. to Compel 5). Second, Petitioner argues that Respondent's objections set forth in the May 15, 2015 correspondence are meritless. (Am. Mot. to Compel 7-8).

Third, Petitioner argues that Respondent did not timely file his Motion to Quash[6] or file a motion for a protective order, thus failing to take "appropriate steps to excuse compliance[.]" (Am. Mot. to Compel 7; Opp'n to Mot. to Quash 4). Lastly, the Motion to Quash does not comply with Local Civil Rule 7(m) and does not propound arguments sufficient to justify quashing a subpoena pursuant to Fed. R. Civ. P. 45(d)(3)(A). (Opp'n to Mot. to Quash 3-5).

Respondent opposes Petitioner's Amended Motion to Compel and moves this Court to Quash the Subpoena. (Mot. to Quash; Opp'n to Am. Mot. to Compel). First, Petitioner failed to "make a good faith effort to resolve this dispute, or even review basic facts[.]" (Opp'n to Am. Mot. to Compel 4). Second, Petitioner's original Motion to Compel "falsely stated" Respondent failed to object within fourteen days of service pursuant to Fed. R. Civ. P. 45. (Opp'n to Am. Mot. to Compel 5). Third, Petitioner filed the Amended Motion to Compel in response to Respondent's correspondence[7] informing Petitioner of this error. (Opp'n to Am. Mot. to Compel 4, Ex. I). Additionally, Respondent argues that the factors to consider with a 28 U.S.C. § 1782(a) request weigh against allowing discovery because (1) the discovery sought is unavailable under Italian law, (2) failing to disclose the aforementioned factor in the Application[8] was an attempt to "circumvent foreign proof-gathering restrictions," (3) Respondent "is a participant in the foreign proceeding," and (4) Petitioner is "'jump[ing] the gun' on discovery in the foreign suit" by seeking discovery prior to "the appropriate stage" in the Italian Proceeding.[9] (Reply in Supp. of Mot. to

---

[6] Petitioner's May 28, 2015 Amended Motion to Compel argued that compliance should be ordered in part because Respondent did not file a Motion to Quash. (Am. Mot. to Compel 7). On June 11, 2015, Respondent filed a Motion to Quash. (Mot. to Quash). In response, Petitioner argued its filing was untimely. (Opp'n to Mot. to Quash 4).

[7] In that correspondence, Respondent explained that any motion was premature and requested that Petitioner withdraw the motion. (Opp'n to Am. Mot. to Compel 4, Ex. I).

[8] Respondent argues that this omission "misleadingly characterized Italian law" and thus the District Court of Maryland did not have the opportunity "to meaningfully consider" the issues Respondent raises. (Reply in Supp. of Mot. to Quash 5).

[9] Respondent argues that responsive pleadings in the Italian Proceeding are not due before October 2015. (Opp'n to Am. Mot. to Compel 8).

Quash 3-5, (citations omitted); Opp'n to Am. Mot. to Compel 6).  With respect to Petitioner's contentions regarding the Motion to Quash, Respondent asserts that he attempted to confer with Petitioner repeatedly, he did not unreasonably delay filing his Motion to Quash, and the Subpoena imposes an undue burden. (Reply in Supp. of Mot. to Quash 1-3).

     **A.**   <u>**Amended Motion to Compel**</u>

        **1.**   **Compliance with Local Civil Rule 7(m) and Fed. R. Civ. P. 37(a)(1).**

As a preliminary matter, the Court notes that the Amended Motion to Compel complies with Fed. R. Civ. P. 37 and the Local Rules of the United States District Court for the District of Columbia. Local Civil Rule 7(m) sets forth a "duty to confer" with opposing counsel in a good-faith effort when a party anticipates filing a nondispositive motion to determine whether there is opposition and whether the scope can be narrowed. The motion must include "a statement that the required discussion occurred, and a statement as to whether the motion is opposed." *Id.* Similarly, Fed. R. Civ. P. 37(a)(1) requires a motion for an order compelling disclosure or discovery to include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. Courts have held that conferring with the opposing party is a prerequisite to any successful motion to compel. *See U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 529-30 (D.D.C. 2006) (denying motion to compel for failure to attempt to meet and confer in good faith prior to filing). Here, the Amended Motion to Compel includes a certification that the parties "conferred in good faith via telephone on May 21, 2015" but were unable to reach a resolution. (Am. Mot. to Compel 1, 12). Petitioner subsequently filed a Motion to Compel the following day.

Respondent does not refute that the parties conferred on May 21, 2015, but he asserts that Petitioner failed to "make a good faith effort to resolve this dispute" because Petitioner rejected

Respondent's May 21, 2015 proposed alternatives to the Subpoena and rushed to file a motion to compel.[10] (Opp'n to Am. Mot. to Compel 4, Ex. H). Despite rejecting these proposals, Petitioner had previously attempted to accommodate Respondent in good faith.[11] (Am. Mot. to Compel Ex. 5, Ex. 7, Ex. 11; Opp'n to Am. Mot. to Compel 3, Ex. D, Ex. F). Respondent's May 21, 2015 proposals attempted to sidestep the court-authorized Subpoena after Petitioner had attempted to accommodate Respondent repeatedly in good faith. Thus, the Court finds that Petitioner's rejections of Respondent's proposals were not indicative of bad faith and that the parties did confer in good faith on May 21, 2015. Therefore, the Amended Motion to Compel complies with Local Civil Rule 7(m) and Fed. R. Civ. P. 37(a)(1).

### 2.  Authority to grant the 28 U.S.C. § 1782(a) request.

A district court has the authority to permit discovery under 28 U.S.C. § 1782(a) when (1) the person from whom discovery is sought resides or is found within the district of the court in which the request is made, (2) the discovery is for use in a proceeding before an international or foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person. *See* 28 U.S.C. § 1782(a); *see also In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 104 (D.D.C. 2010) (citing *Schmitz v. Bernstein, Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004)).

Here, Respondent resides in the district of the court in which the Application was made because he resides in Annapolis, Maryland and the United States District Court for the District of Maryland granted the Application. (Application 3; Am. Mot. to Compel 1; Opp'n to Am. Mot. to

---

[10] Respondent had proposed either waiting to see whether the Italian court ordered discovery or both parties agreeing to engage in reciprocal discovery beyond what Italian law permits. (Opp'n to Am. Mot. to Compel 4, Ex. H).

[11] On May 5, 2015, Petitioner agreed to reschedule Respondent's May 11, 2015 deposition to May 21, 2015 (Am. Mot. to Compel Ex. 5, Ex. 11; Opp'n to Am. Mot. to Compel Ex. D [4-1] 23). On May 19, 2015, Petitioner proposed accommodating Respondent by changing the location of his deposition from Petitioner's counsel's office in Washington, District of Columbia to Annapolis, Maryland. (Am. Mot. to Compel Ex. 7; Opp'n to Am. Mot. to Compel 3, Ex. F).

Compel 1; Order). Second, the discovery sought in the Subpoena is for use in a proceeding before a foreign tribunal because it is for use in the Italian Proceeding. (Am. Mot. to Compel 1-2). Third, the Application is made by an interested party because Petitioner is a party in the Italian Proceeding. (Am. Mot. to Compel 1-2); *see also Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) (citation omitted) (internal quotations omitted) (noting that the legislative history of 28 U.S.C. § 1782 indicates that "a party to the foreign . . . litigation" is an "interested person"). Thus, the District Court for the District of Maryland had authority to grant the Application.

### 3. Authority to enforce a subpoena issued pursuant to 28 U.S.C. § 1782(a).

Pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i), a motion to compel must be filed in "the court for the district where compliance is required[.]" Here, the Subpoena states that compliance is required at Petitioner's counsel's office: Arnall Golden Gregory, LLP, 1775 Pennsylvania Ave., NW, Ste. 1000, Washington, District of Columbia 20006. (Subpoena 2). Accordingly, a motion to compel compliance with the Subpoena must be filed in the District of Columbia. Thus, this Court has authority to enforce the Subpoena.

### 4. Exercising discretion to enforce a subpoena issued pursuant to 28 U.S.C. § 1782(a).

If the court determines it has the authority to permit or enforce the 28 U.S.C. § 1782(a) request, then it must determine whether it should exercise this discretion. *See Intel*, 542 U.S. at 264-65*; see also Norex*, 384 F. Supp. 2d at 49 (utilizing factors set forth in *Intel* to determine whether to grant a motion to compel compliance with a subpoena issued pursuant to 28 U.S.C. § 1782(a)). The court should consider whether permitting discovery furthers the "twin aims" of 28 U.S.C. § 1782(a): "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel*, 542

U.S. at 252 (citing *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002)). The Supreme Court has declined "to adopt supervisory rules" and instead identified several factors for consideration without indicating how much weight to give each factor. *Id.* at 264-65; *see also In Matter of Application of Leret*, 51 F. Supp. 3d 66, 71 (D.D.C. 2014). These factors are (a) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (b) "the nature of the foreign tribunal"; (c) "the character of the proceedings underway abroad"; (d) "the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (e) whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (f) the scope of discovery. *Intel*, 542 U.S. at 264-65 (citations omitted).

### a.   Party from whom discovery is sought.

When a 28 U.S.C. § 1782(a) request seeks discovery from a participant in the foreign proceeding, this weighs against permitting discovery because the need for discovery assistance is not as great as if the discovery was sought from a nonparticipant. *See Intel*, 542 U.S. at 264 (explaining that "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."); *see also In Matter of Application of Leret*, 51 F. Supp. 3d at 71 (upholding magistrate judge's grant of 28 U.S.C. § 1782(a) request primarily because the commanded party was a party to the foreign litigation and he had volunteered "to make himself available for discovery requests in the [foreign court]"); *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 105, 108 (finding Petitioner not entitled to discovery in part because none of the Respondents were a party to the foreign proceeding). Here, Petitioner's request seeks discovery from a party in the Italian Proceeding. (Am. Mot. to Compel 1-2). Thus, this factor weighs against enforcing the Subpoena.

### b. *Nature of the foreign tribunal.*

The nature of the foreign tribunal weighs against enforcing discovery if the party seeking the discovery had options in selecting the forum for the foreign proceeding. *See In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 106 (finding the nature of the tribunal weighs against granting the petition because Petitioner had options of arbitrating the dispute under different rules, in a different arbitration instruction, or in a court and therefore the court was "reluctant . . . to interfere with the parties' bargained-for expectations concerning the arbitration process."). Here, Petitioner did not have options regarding forum or law because the Agreement included choice of law and choice of forum clauses. (Agreement ¶¶ 12.1, 12.2; Opp'n to Am. Mot. to Compel 1). Accordingly, Italian law governs the Agreement and the Court of Milan has exclusive jurisdiction. (Agreement ¶¶ 12.1, 12.2; Opp'n to Am. Mot. to Compel 1). Because Petitioner did not have options in pursuing its claim, the nature of the foreign tribunal weighs in favor of enforcing the Subpoena.

### c. *Character of the foreign proceedings.*

To determine whether the character of the foreign proceeding favors permitting discovery, courts analyze how far along the foreign suit is in the discovery process. *See In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 106-07 (finding the character of the foreign proceeding weighs against granting the petition because Petitioner filed the petition with less than a month before discovery closed, neither party had requested non-party discovery from the foreign tribunal and the parties had not discussed non-party discovery); *see also Norex*, 384 F. Supp. 2d at 54 (denying motion to compel in part because the foreign litigation may not have reached "the stage in which discovery would be appropriate" and thus the Court is wary that Petitioner "may be

using the United States statutes and federal court system to 'jump the gun' on discovery in the underlying foreign suit.").

The Court finds that the Italian Proceeding is in its early stages. Unlike the petitioner *In re Application of Caratube Int'l Oil Co., LLP*, Petitioner here has not delayed in seeking discovery under 28 U.S.C. § 1782(a). 730 F. Supp. 2d at 106-07. Instead, Petitioner is proactively and efficiently using its time to seek discovery. Because the hearing at which the Court of Milan may determine appropriate evidence has not been set, the Court finds that enforcing the Subpoena shall not prejudice Respondent, who will also have sufficient time to seek discovery under 28 U.S.C. § 1782(a) for use in the Italian Proceeding if he desires. Therefore, enforcing the Subpoena in light of the character of the Italian Proceeding furthers one of the twin aims of 28 U.S.C. 1782(a): "providing efficient assistance to parties in international litigation[.]" *Intel Corp.*, 542 U.S. at 252 (citation omitted). Moreover, enforcing the Subpoena is an action independent of the Court of Milan's discovery procedures.[12] Thus, the character of the foreign proceeding weighs in favor of enforcing the Subpoena.

### d.   *Receptivity of the foreign tribunal to U.S. judicial assistance.*

A foreign tribunal's receptivity to judicial assistance through 28 U.S.C. § 1782(a) generally weighs in favor of permitting the discovery. *See In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 105 (citation omitted). Analyzing a foreign tribunal's receptivity is not an extensive process. *See Intel*, 542 U.S. at 244 (28 U.S.C. § 1782(a) "does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here. Comparisons of that order can be fraught with danger."); *see also In re Veiga*, 746 F. Supp. 2d 8, 24 (D.D.C. 2010) (citation omitted) (internal quotation marks omitted) (28 U.S.C. § 1782(a)

---

[12] The Court of Milan can decide whether or not to accept the discovery obtained through the Subpoena at the appropriate time in its proceedings.

"neither contemplates nor requires district courts to become embroiled in a legal tug-of-war over whether the foreign tribunal would be receptive to their assistance."). The evaluation simply involves "authoritative proof that a foreign tribunal would reject evidence obtained" under 28 U.S.C. § 1782(a). *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 105-06 (quoting *Euromepa. S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099, 1100 (2d Cir. 1995) (noting it is not desirable to engage in "an extensive examination of foreign law regarding the existence and extent of discovery in the forum country" to determine receptivity to judicial assistance)); *see also Infineon Technologies AG v. Green Power Technologies Ltd.*, 247 F.R.D. 1, 4 (D.D.C. 2005) (citation omitted) (noting a statement from the foreign tribunal that it did not want the materials is an important factor in denying a 28 U.S.C. § 1782(a) request). The party resisting the discovery bears the burden of proving "that the foreign tribunal would reject the evidence sought." *In re Veiga*, 746 F. Supp. 2d at 23-24 (citing *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 105-06).

Petitioner relies on the declaration of Petitioner's Italian counsel to assert the Court in Milan is receptive to the discovery that the Subpoena seeks. (Am. Mot. to Compel 7-8; Reply in Supp. of Am. Mot. to Compel 5). Petitioner's Italian counsel claims that "Italian law does not limit the methods by which parties may obtain discovery, as long as the discovery has been obtained legally" and "[t]here is no evidence that the Italian Court would reject evidence obtained pursuant to §1782." (Am. Mot. to Compel 8; Tirone Decl. ¶¶ 21, 22). Pursuant to *In re Veiga*, Respondent has the burden of proof as the resisting party. 746 F. Supp. 2d at 23-24. Because Respondent failed to contest Petitioner's assertion of receptivity, Respondent failed to meet his burden of proof with respect to this factor. (Reply in Supp. of Am. Mot. to Compel 5; Opp'n to Am. Mot. to Compel; Mot. to Quash; Reply in Supp. of Mot. to Quash). Therefore, Petitioner's assertion that the Court

of Milan is receptive to discovery sought under 28 U.S.C. § 1782(a) weighs in favor of enforcing the Subpoena.

### e. Circumvention of foreign proof-gathering restrictions and policies.

A petition "conceal[ing] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" weighs against enforcing discovery. *Intel*, 542 U.S. at 264-65. It is irrelevant if the material sought is not discoverable in the foreign tribunal because 28 U.S.C. § 1782(a) does not impose a foreign-discoverability requirement.[13] *See Intel*, 542 U.S. at 253, 260, 262 (explaining a foreign-discoverability rule is "senseless" if a "foreign tribunal would readily accept relevant information discovered in the United States"). Concerns of equality between adversarial parties in litigation do not justify a "cross-the-board foreign-discoverability rule[.]" *Id.* at 262. If an interested person is seeking the information, then the district court can "condition relief upon that person's reciprocal exchange of information." *Id.* (citing *Euromepa*, 51 F.3d at 1102). Alternatively, the foreign tribunal can condition acceptance of the information obtained under 28 U.S.C. § 1782(a) to ensure equality between the litigants. *Id.*

If the material sought is discoverable in the foreign tribunal, litigants are not required to seek discovery through the foreign tribunal prior to requesting through the United States, but courts have the discretion to consider this factor. *See In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 107-08. Some courts have found that a party's efforts to obtain information from United States courts prior to attempting to obtain "comparable discovery" through the foreign

---

[13] The statute's text does not limit authority to materials discoverable in the foreign jurisdiction and its legislative history does not indicate Congress intended such a requirement. *See Intel*, 542 U.S. at 260; *see also In re Application of Gianoli Aldunate*, 3 F.3d 54, 59 (2d Cir. 1993) ("If Congress has intended to impose such a sweeping restriction on the district court's discretion, at a time when it was enacting liberalizing amendments to the statute, it would have included statutory language to that effect."). Moreover, a foreign-discoverability requirement conflicts with the twin aims of 28 U.S.C. § 1782(a). *Id.* at 260-61 (citation omitted) ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions – reasons that do not necessarily signal objection to aid from United States federal courts.").

tribunal is not a circumvention of foreign proof-gathering policies and thus "irrelevant." *In re Veiga*, 746 F. Supp. 2d at 24 (citation omitted); *see also In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 107-08 (quoting *Euromepa*, 51 F.3d at 1098) (explaining some courts have "refused to engraft" onto 28 U.S.C. § 1782(a) a "'quasi-exhaustion requirement'"); *Infineon*, 247 F.R.D. at 5 (finding no attempt to circumvent when Petitioner could obtain documents under foreign procedures but instead "attempts more efficiently to obtain use of relevant documents" in the United States). Other courts have considered a party's failure to attempt to request discovery from the foreign tribunal first weighs against granting the request. *See In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 107-08 (citation omitted) (finding Petitioner attempted to circumvent the foreign "[t]ribunal's control over its own discovery process" because the petitioner "side-stepped" guidelines petitioner proposed and the Tribunal accepted).

Respondent claims that Petitioner is attempting to circumvent the Court of Milan's foreign proof-gathering policies and procedures. (Opp'n to Mot. to Am. Mot. to Compel 6-7; Reply in Supp. of Mot. to Quash 3-4). First, Respondent asserts that the Court of Milan does not permit the deposition testimony or document requests that Petitioner seeks.[14] (Opp'n to Mot. to Am. Mot. to Compel 6-7; Reply in Supp. of Mot. to Quash 3-4). Second, Petitioner has rejected Respondent's multiple offers "that *both* parties could provide discovery on a reciprocal basis[.]" (Opp. To Am. Mot. to Compel 7, Ex. H; Reply in Supp. of Mot. to Quash 4). Lastly, Respondent argues that Petitioner failed to comply with Italian law because it did not "first mak[e] any effort to obtain a discovery order from the court in Milan[.]" (Opp. to Am. Mot. to Compel 7).

---

[14] Respondent argues that Italy does not have "pre-hearing fact discovery" and that discovery in Italy "is entirely run within the Court Proceeding under the Judge's direct supervision." (Opp'n to Mot. to Am. Mot. to Compel 6, Ex. B). It is rare for Italian courts to grant a request to order a party "to submit one or more specific documents to the court[.]" (Opp'n to Mot. to Am. Mot. to Compel 6-7, Ex. B). Respondent asserts that Italy "has informed the Hague Conference for Private International Law that it will not grant requests for pre-trial discovery of documents." (Opp'n to Am. Mot. to Compel 7, Ex. J [4-1] 46).

Petitioner refutes it is not circumventing Italian restrictions on discovery because the evidence is discoverable under Italian law.[15] (Am. Mot. to Compel 8; Tirone Decl. ¶¶ 21, 22; Reply in Supp. of Am. Mot. to Compel 3, 5). Petitioner notes that "[s]everal courts have also compelled compliance with a Subpoena issued under § 1782 related to an Italian proceeding."[16] (Reply in Supp. of Am. Mot. to Compel 5; Opp'n to Mot. to Quash 7-8 (citing *Lancaster Factoring Co. Ltd.*, 90 F.3d at 39; *In re Nieri*, 2000 U.S. Dist. LEXIS 540 at *2-4)).

The parties' conflicting evidence as to whether the discovery sought is permissible in the Court of Milan is irrelevant because 28 U.S.C. § 1782(a) does not bar discovery impermissible in the foreign tribunal. *See Intel*, 542 U.S. at 253, 260, 262. Respondent's argument that Petitioner did not seek the discovery from the Court of Milan first is also irrelevant because Petitioner was not required to do so, assuming *arguendo,* that the discovery is permissible. *See In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 107-08. This Court finds the fact that Petitioner did not first seek the discovery from the Court of Milan is not an attempt to circumvent the court's restrictions and procedures. *See In re Veiga*, 746 F. Supp. 2d at 24 (citation omitted); *see also In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d at 107-08 (citation omitted); *Infineon*, 247 F.R.D. at 5. Thus, the absence of a circumvention attempt weighs in favor of enforcing the Subpoena.

---

[15] Petitioner's Italian counsel claims that "Italian law does not limit the methods by which parties may obtain discovery, as long as the discovery has been obtained legally[.]" (Am. Mot. to Compel 8; Tirone Decl. ¶¶ 21, 22).

[16] Upon this Court's own research, it appears that Petitioner overstated the quantity of courts that have compelled compliance with a subpoena issued pursuant to 28 U.S.C. § 1782 in which the underlying foreign proceeding was Italian. Although the decisions on which Petitioner relies were issued prior to *Intel* and outside of this Court's jurisdiction, they do enforce compliance with a subpoena seeking discovery for an Italian proceeding. *See Lancaster Factoring Co. Ltd.*, 90 F.3d at 39, 43; *see also In re Nieri*, No. Civ. A. M12-329, 2000 U.S. Dist. LEXIS 540 at *1-4 (S.D.N.Y., Jan. 24, 2000). *In re Nieri* identified principles later held in *Intel*: 28 U.S.C. § 1782(a) does not bar discovery if it is undiscoverable in the foreign court and "preventing circumvention of foreign restrictions on discovery constitutes one valid policy for the district court to consider in exercising its discretion." 2000 U.S. Dist. LEXIS 540, at *1 (citation omitted); 542 U.S. at 253, 260, 262, 264-65. Accordingly, these cases are persuasive, but not binding.

### f. *Scope of discovery.*

A court may reject or modify unduly burdensome or intrusive requests. *See Intel*, 542 U.S. at 265 (citations omitted); *see also Lazaridis*, 760 F. Supp. 2d at 115-16 (declining to permit discovery in part because of the vague, "wide-ranging request" seeking six categories of documents, some over an eight-year time period); *In re Veiga*, 746 F. Supp. 2d at 25-26 (declining to order production of documents located outside the United States); *Infineon*, 247 F.R. D. at 5 (noting the material sought is not burdensome because it has already been produced and movant is "only asking to share the documents" with its foreign counsel and possibly the foreign tribunal).

Here, Respondent objected that the document request attached to the Subpoena "is questionable and overly broad and overly burdensome" via e-mail on May 6, 2015.[17] (Am. Mot. to Compel Ex. 11; Opp'n to Am. Mot. to Compel Ex. D). His counsel then reiterated these objections in correspondence on May 15, 2015,[18] and argued that the discovery requests are impermissible under Italian law. (Opp'n to Am. Mot. to Compel 3, Ex. E 25-26 (quoting Subpoena 5, 13)). Respondent explains Request Number 1 is overly broad because it "seeks seven different subcategories of documents," including all documents regarding "Competing Software," a term defined broadly in the Subpoena as "any software that may be considered to be in competition with, or may neutralize the effectiveness of, software developed, marketed or sold by HT." (Opp'n

---

[17] The Court finds that Respondent's objections were due May 7, 2015 and therefore his May 6, 2015 objections were timely. *See* Fed. R. Civ. P. 45(d)(2)(B). However, the Court finds these objections were insufficient. First, they did not include Respondent's signature or address. (Am. Mot. to Compel Ex. 11; Opp'n to Am. Mot. to Compel 3 Ex. D); *see* Fed. R. Civ. P. 26(g)(1). Second, the objections were not explained. (Am. Mot. to Compel Ex. 11; Opp'n to Am. Mot. to Compel 3, Ex. D). A party raising an unduly burdensome objection must "demonstrat[e] how the document request is 'overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.'" *Thong v. Andre Chreky Salon*, 247 F.R.D. 193, 197 (D.D.C. 2008) (quoting *U.S. ex rel. Fisher v. Network Software Assocs.*, 217 F.R.D. 240, 246 (D.D.C. 2003)). Because Respondent simply stated the objections in his May 6, 2015 e-mail without explanation, his objections were improper. (Am. Mot. to Compel Ex. 11); *see Andre Chreky Salon*, 247 F.R.D.at 197 (citation omitted) (internal quotations omitted).

[18] The Court finds Respondent's May 15, 2015 objections untimely. *See* Fed. R. Civ. P. 45(d)(2)(B). The objections were, however, properly articulated because they complied with Fed. R. Civ. P. 26(g)(1) and explained the nature of the burden asserted. (Opp'n to Am. Mot. to Compel 3, Ex. E 25-26). *See Andre Chreky Salon*, 247 F.R.D. at 197 (citation omitted) (internal quotations omitted).

to Am. Mot. to Compel 3 Ex. E (quoting Subpoena 5, 13)). Petitioner refutes that the requests are not overly broad or burdensome because the Subpoena is "reasonable on its face" and the Subpoena propounds "only four limited document requests" that are "plainly relevant to the Italian Proceeding. (Am. Mot. to Compel 8; Opp. to Mot. to Quash 6). Petitioner also argues that Respondent's objections fail to "provide sufficient specificity to justify non-Production under the federal rules[.]" (Am. Mot. to Compel 10).

This Court finds that the definition of "Competing Software" is not overly broad because it is relevant to Petitioner's Italian Complaint. Petitioner alleges that Respondent violated the non-compete clause of the parties' Agreement by representing competitors and collaborating in developing, marketing, and selling a competitor's software. (Am. Mot. to Compel 4; Tirone Decl. ¶¶ 10-14). This Court finds that all four document requests are relevant to the Italian Proceeding and limited in scope as they request documents regarding the Agreement allegedly violated and Petitioner's competitors and their software, as specified in the Italian Complaint. (Subpoena 13; Am. Mot. to Compel 4; Tirone Decl. ¶¶ 10-13). This Court additionally limits the scope of the requests to the time period during which the Agreement prohibited Respondent from competing with Petitioner as set forth in the non-compete clause: "for the entire duration of [the March 1, 2012 Agreement] and for a period of one year starting from the termination of [the Agreement.]" (Agreement 2, 4 at ¶ 5.1).[19] Furthermore, any proprietary and confidential information not pertaining to Petitioner may be redacted.

### g.  *Other factors for consideration.*

In the instant case, Respondent agreed to appear at his deposition, retained counsel, and ultimately refused to be deposed. (Am. Mot. to Compel 7, Ex. 5, Ex. 10, Ex. 11; Opp'n to Am.

---

[19] At the hearing, Respondent's counsel indicated that the Agreement terminated in March 2015.

Mot. to Compel 3, Ex. D, Ex. G 34). This Court finds that Respondent's change in position is unfair to Petitioner and a waste of Petitioner's time and resources.  Enforcing the deposition based on this factor furthers the twin aims of 28 U.S.C. § 1782(a) of "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel*, 542 U.S. at 252 (citation omitted).

Therefore, an overwhelming majority of the factors analyzed weigh in favor of this Court exercising its discretion pursuant to the twin aims of 28 U.S.C. § 1782(a) and enforcing the Subpoena, narrowing the scope of the requests. Barring a reason to quash the Subpoena, Petitioner's Amended Motion to Compel is granted in part and denied in part.

### B. **Motion to Quash**

#### 1. **Noncompliance with Local Civil Rule 7(m).**

Local Civil Rule 7(m) requires the parties to confer in good-faith prior to filing nondispositive motion and explain in the motion that the meet and confer took place. *See supra* at 9. Petitioner argues that Respondent did not discuss the anticipated motion with Petitioner or include a statement in its motion that this discussion occurred. (Opp'n to Mot. to Quash 3). Respondent asserts that he attempted to confer with Petitioner repeatedly. (Reply in Supp. of Mot. to Quash 1-3). Respondent relies on a May 22, 2015 correspondence in which Respondent requested that Petitioner give notice before filing "any motion to compel, so that [Respondent] may file a related motion to quash." (Reply in Supp. of Mot. to Quash 2, Ex. A [10-1] 3). On May 27, 2015, Respondent sent Petitioner correspondence instructing Petitioner that it should seek discovery under Italian law before filing motions in the United States and requesting that Petitioner withdraw its motion to compel "to spare further unnecessary expense by both parties, and the court." (Reply in Supp. of Mot. to Quash 2, Ex. B [10-1] 6).

The Court finds Respondent's correspondence insufficient. This correspondence puts Petitioner on notice of Respondent's intention to file a motion to quash, but it does not attempt to narrow the scope of the issues. Respondent failed to provide evidence that the parties discussed the "anticipated motion" or that Respondent attempted to schedule a meeting with Petitioner to discuss the motion. Local Civil Rule 7(m). Moreover, the Motion to Quash does not include the mandatory certification that the discussion took place. *Id.* Therefore, the Court finds that the Motion to Quash does not comply with Local Civil Rule 7(m).

### 2.  Untimely filing.

Pursuant to Fed. R. Civ. P. 45 (d)(3), the court where compliance is required may quash or modify a subpoena once a party "timely" moves to quash or modify. Generally, courts have interpreted "timely" as "within the time set in the subpoena for compliance." *U.S. ex rel. Pogue*, 238 F. Supp. 2d 270, 278, 278 n.6 (D.D.C. 2002) (citing *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) ("it is reasonable to assume that the motion to quash should be brought before the noticed date of the scheduled deposition")) (agreeing that "timely" generally indicates "within the time set in the subpoena for compliance" but recognizing that "the time for compliance could be so small that it would not even permit time to file a motion to quash"). Motions to quash filed a significant amount of time after a subpoena's compliance deadline are untimely. *Id.* (finding that a motion to quash filed ten months after the deadline specified in the subpoena is untimely); *see also In re Motorsports Merch. Antitrust Litig.*, 186 F.R.D. 344, 346, 348, 350 (W.D. Va. 1999) (finding a corporate defendant's motion to quash untimely because it was filed two months after the subpoena was due and 36 days after corporate representatives became aware of the subpoena and had retained counsel to file objections, and "[e]ven more

troubling," defendant had informed plaintiffs' counsel "it intended to comply with the subpoena and simply needed more time to produce the documents requested.").

Here, Petitioner argues that Respondent's Motion to Quash is untimely because it was filed 21 days after "the time set in the subpoena for compliance[.]" (Opp. to Mot. to Quash 4 (citing *U.S. ex rel. Pogue,* 238 F. Supp. 2d at 278)).[20] The Subpoena required Respondent to be deposed and produce documents on May 11, 2015. (Subpoena 2). Respondent was served with the Subpoena on April 23, 2015. (Affidavit of Service). Petitioner granted Respondent an extension for the deposition, rescheduling from May 11, 2015 to May 21, 2015. (Am. Mot. to Compel 5, Ex. 5, Ex. 11; Opp'n to Am. Mot. to Compel 3, Ex. D). Thus, the compliance date was May 21, 2015 and Respondent had 28 days to comply with the Subpoena or file a Motion to Quash. (Reply in Supp. Mot. to Quash 3); *see U.S. ex rel. Pogue*, 238 F. Supp. 2d at 278. However, Respondent did not file his Motion to Quash until June 11, 2015, 21 days after the date for compliance, 31 days after Respondent retained counsel, and 50 days after he was served with the Subpoena. (Mot. to Quash; Subpoena 2; Opp'n to Am. Mot. to Compel 3; Affidavit of Service); *see U.S. ex rel. Pogue*, 238 F. Supp. 2d at 278. The Court finds that 28 days is a sufficient period of time to permit filing a motion to quash, and accordingly, Respondent's Motion to Quash is untimely.[21]

### 3. Insufficient Arguments to Justify Quashing the Subpoena.

If the commanding party "timely" moves the court, the court *must* quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply

---

[20] Respondent argues that "timely" should not be interpreted in this case as "within the time set in the subpoena for compliance" because the time for compliance was so short that it would be "unjust" to find the motion untimely. (Reply in Supp. Mot. to Quash 3 (citing *U.S. ex rel. Pogue*, 238 F. Supp. 2d at 278 n.6)).

[21] The Court also finds it "troubling" that Respondent filed a motion to quash after he agreed to attend his deposition and indicated he would produce documents but needed additional time to produce them. (Am. Mot. to Compel Ex. 5, Ex. 11; Opp'n to Am. Mot. to Compel Ex. D); *see In re Motorsports Merch. Antitrust Litig.*, 186 F.R.D. at 350.

beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45 (d)(3)(A). Here, Petitioner argues that even if Respondent's Motion to Quash was timely, it does not "set forth grounds sufficient to justify the quashing or modification of the subpoena" pursuant to Fed. R. Civ. P. 45 (d)(3)(A). (Opp. to Mot. to Quash 5).[22]

### a. *Reasonable time to comply.*

Pursuant to Fed. R. Civ. P. 45 (d)(3)(A)(i) the court must quash or modify a subpoena that "fails to allow a reasonable time to comply[.]" Although the rule does not define reasonable time for compliance, "reasonableness seems to be related to the extent of the materials requested and the other underlying circumstances of the particular case." 9A Fed. Prac. & Proc. Civ. § 2463.1 (3d ed.); *see also Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 25 (D.D.C. 2005) (finding 29 days is "easily enough time to comply" with subpoenas "for document depositions only").

The Subpoena required Respondent to be deposed and produce documents in response to four limited requests for specific documents related to the allegations in Plaintiff's Italian Complaint, on May 11, 2015. (Subpoena 2). Respondent was served with the Subpoena on April 23, 2015 and thus had 18 days to comply with the Subpoena or file a motion to quash. (Affidavit of Service; Subpoena 2). Petitioner subsequently granted Respondent a ten-day extension for the deposition, thus providing Respondent with 28 days to comply. (Am. Mot. to Compel 5, Ex. 5, Ex. 11; Opp'n to Am. Mot. to Compel 3, Ex. D). The Court finds that 28 days is sufficient time to appear for a deposition and produce documents in response to limited requests.

---

[22] Neither party raised arguments regarding conditions permitting quashing or modifying the Subpoena pursuant to Fed. R. Civ. P. 45 (d)(3)(B). Here, experts are not at issue and neither party has identified issues with disclosing "trade secret or other confidential research, development, or commercial information[.]" *Id.*

### b. Compliance within geographical limitations.

Pursuant to Fed. R. Civ. P. 45(d)(3)(A)(ii), the court must quash or modify a subpoena that "requires a person to comply beyond the geographical limits specified in Rule 45(c)." Depositions and productions of documents are geographically limited to locations "within 100 miles of where the person resides is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(1)(A), 45(c)(2)(A). Here, Petitioner argues the Subpoena does not violate geographical limitations. (Opp. to Mot. to Quash 6). Respondent does not contest this. (Opp. to Am. Mot. to Compel; Reply in Supp. of Mot. to Quash). Thus, the Court finds that the Subpoena does not require Respondent to comply beyond the permitted geographical limits.

### c. Disclosure of privileged or protected matter.

Pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii), the court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Respondent has not argued that the Subpoena seeks privileged or protected matter. (Mot. to Quash; Opp. to Am. Mot. to Compel; Reply in Supp. of Mot. to Quash).

### d. Undue burden.

Pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iv), the court must quash or modify a subpoena that "subjects a person to undue burden." Respondent argues that the Subpoena imposes an undue burden and Petitioner refutes this. *See supra* at 20-21. For the reasons set forth above, the Court finds the Subpoena does not subject Respondent to undue burden. *See supra* at 22-23.

Because Respondent failed to prove the Court must quash the Subpoena, the Court denies Respondent's Motion to Quash and thus, the Respondent must appear for a deposition.

C.  **Attorneys' Fees and Costs**

Both parties request attorneys' fees and costs. First, Respondent requests attorneys' fees and costs incurred as a result of the Subpoena and Motion to Compel. (Mot. to Quash). Because Respondent's Motion to Quash is denied, the Court finds he is not entitled to attorneys' fees or costs. Next, Petitioner requests an award of costs, including attorneys' fees, related to compelling Respondent's compliance with the Subpoena. (Am. Mot. to Compel 2). Attorneys' fees and costs incurred in preparing a motion to compel are governed by Fed. R. Civ. P. 37(a)(5). Because Petitioner's Motion to Compel is granted in part and denied in part, the Court may award Petitioner expenses reasonably incurred in making the Motion, including attorneys' fees. *See* Fed. R. Civ. P. 37(a)(5)(C). Petitioner is directed to file an accounting of its attorneys' fees relating to the filing of the Amended Motion to Compel, Reply in Support of the Amended Motion to Compel and Opposition to the Motion to Quash within ten days after the deposition has been held. [23] This Court will then issue a ruling accordingly.

## IV.  CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Petitioner's Amended Motion to Compel [3] and denies Respondent's Motion to Quash [5]. An Order consistent with this Memorandum Opinion will be issued separately.

Date: August 28, 2015

_____/s/_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE

---

[23] Counsel will not be awarded attorney's fees relating to the initial Motion to Compel that was later amended.