IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HT S.R.L., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 15-mc-00664-RBW-AK |
| | ) | |
| LUIS ALEJANDRO VELASCO, | ) | |
| | ) | |
| Respondent. | ) | |

## MR. VELASCO'S OBJECTIONS TO THE MAGISTRATE'S AUGUST 28, 2015 DECISION AND MEMORADUM IN SUPPORT OF OBJECTIONS AND MOTION TO STAY DISCOVERY

Mr. Velasco, though undersigned counsel, respectfully submits the objections below to the August 28, 2015 decision entered by Magistrate Kay in the above-captioned matter. Mr. Velasco is also submitting two new affidavits recently obtained from Mr. Velasco's counsel in Italy, attached hereto as Exhibits A and B, in support of his objections and his related motion to stay discovery.

### PROCEDURAL HISTORY

On March 17, 2015, the Petitioner, HT S.r.l ("HT"), filed suit against Mr. Velasco in Milan, Italy. Dkt. 3-2 (HT Application for Discovery) at Ex. B (Affidavit from HT Italian Counsel R. Tirone) ("Tirone Affidavit") ¶ 9. The complaint filed by HT in Italy alleges that Mr. Velasco violated the non-compete clause in a consulting agreement he entered into with HT. *Id.*

Three weeks after filing suit in Italy, HT filed an *ex parte* motion in the District of Maryland asking for an order pursuant to 28 U.S.C. § 1782 allowing HT to obtain discovery from Mr. Velsaco in the United States for use in the Italian proceeding. Dkt. 3-2 (HT *Ex Parte* Motion to Conduct Discovery for Use in a Foreign Proceeding). HT did not make any effort to contact Mr. Velasco, or the Court in Milan, to discuss the discovery it sought before filing its *ex parte* application.

Since HT's motion to conduct discovery was filed *ex parte* Mr. Velasco was not given notice of the motion and had no chance to respond while the motion was pending in the District of Maryland. HT's *ex parte* motion was granted unopposed on April 17, 2015. Dkt. 3-2 (April 17, 2015 Order Grating HT Application for Discovery).

On April 23, 2015, HT served a subpoena on Mr. Velasco at his home in Annapolis, Maryland. Dkt. 3-3 (subpoena); Dkt. 3-4 (proof of service). HT's subpoena commanded Mr. Velasco to appear for a deposition at the office of HT's counsel in Washington D.C. on May 11, 2015. Dkt. 3-4 at 2. Mr. Velasco was also commanded to produce documents to counsel for HT on May 11, 2015. *Id.*

Mr. Velasco was unrepresented when he was served with the subpoena on April 23, 2015. After receiving the subpoena, he contacted counsel for HT to seek additional time to respond. On May 5, 2015, counsel for HT told Mr. Velasco they would move his deposition to May 21, 2015, but told him he was still required to produce documents on May 11, 2015. Dkt. 3-11 (May 5, 2015 email from counsel for HT).

The subpoena form that was served on Mr. Velasco included the text of Fed.R.Civ.P. 45(d) which informed him of his right to object to the subpoena within 14 days of service. Dkt. 3-3 (HT Subpoena) at 4. On May 6, 2015 Mr. Velasco, who was still without counsel, followed the instructions on the subpoena form and timely informed counsel for HT that he objected to the discovery sought by the subpoena. Dkt. 3-11 (May 6, 2015 email from Mr. Velasco to counsel for HT).

On May 11, 2015 Mr. Velasco retained undersigned counsel to help him respond to the HT subpoena. Four days later, after reviewing HT's *ex parte* application and meeting with Mr. Velsaco, undersigned counsel wrote to counsel for HT to expand on Mr. Velasco's objections and explain why the discovery sought by HT was premature and improper under Italian law. Dkt. 3-6 (May 15, 2015 letter from counsel for Mr. Velasco).

2

Counsel for HT responded on May 19, 2015. Dkt. 3-7 (May 19, 2015 letter from counsel for HT). Counsel for HT dismissed Mr. Velasco's objections out of hand in that letter, and then made a perfunctory offer to "'meet and confer'" on May 21, 2015 "a half hour before [Mr. Velasco's] deposition" would begin. Dkt. 3-7 at 2.

Counsel for Mr. Velasco continued corresponding with HT on May 19 and 20, 2015, trying to explain Mr. Velasco's position and propose alternatives to expensive motions practice, including agreeing to exchange mutual discovery if HT was unwilling to allow both parties to wait for discovery to take place under Italian law. Dkt. 4-1, Ex. G (May 19-20, 2015 email exchange) at 32-35.

On May 20, 2015, after previously refusing to meet and confer unless Mr. Velasco appeared for his deposition at the same time, counsel for HT agreed that the parties could confer the following day. *Id*. at 33.

When the parties spoke on May 21, 2015 counsel for Mr. Velasco presented multiple proposals for permitting fair discovery by both parties without engaging in burdensome discovery fights. Dkt. 4-1, Ex. H (May 22, 2015 letter from counsel for Mr. Velasco) at 38-39. Specifically, counsel for Mr. Velasco proposed that both parties should agree to be governed by the discovery obligations set by the Italian court, or in the alternative, both parties should agree to be governed by United States discovery rules. *Id*. Counsel for HT was not receptive to either proposal.

The next day, counsel for Mr. Velasco drafted a letter memorializing the meet and confer, pleading with HT "to reconsider its position and at least seek a discovery order from an Italian court before engaging in unnecessary litigation in the United States." Dkt. 4-1 at 39. But while counsel for Mr. Velasco was making a good faith effort to follow up on the meet and confer, counsel

for HT had already rushed to court with a Motion to Compel. Dkt. 1 (HT Motion to Compel filed May 22, 2015).

HT's initial motion to compel was based on the demonstrably false assertion that Mr. Velasco had failed entirely to object to the subpoena within 14 days. Dkt. 4-1, Ex. I (May 27, 2015 letter from counsel for Mr. Velasco) at 41-42. When counsel for Mr. Velasco realized this was the case, she wrote to counsel for HT as a courtesy before filing a response. *Id*. That letter repeated the plea that HT step back from this fight and first at least seek a discovery order from the Italian court before moving to compel unilateral discovery against Mr. Velasco under United States law.[1] *Id*. at 42.

Counsel for HT ignored that suggestion, and instead promptly refiled an amended motion to compel, removing the false statements about Mr. Velasco's failure to object, but seeking the same relief. Dkt. 3 (HT Amended Motion to Compel).

Mr. Velasco filed his opposition to the amended motion to compel on June 11, 2015 along with a cross-motion to quash the subpoena which was based on the same memorandum of law and sought the same relief sought in Mr. Velasco's opposition to the motion to compel. Dkt. 4, 5.

On June 18, 2015 the motion to compel was referred to Magistrate Kay. Dkt. 7, 8.  A hearing was held in front of Magistrate Kay on August 10, 2015.  On August 28, 2015, Magistrate Kay issued a decision. Dkt. 11. The August 28, 2015 decision grants HT's Amended Motion to Compel, denies

---

[1] Mr. Velasco could not simply seek reciprocal discovery against HT using § 1782 because § 1782 does not apply to evidence held outside of the United States. *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 47-48 (D.D.C. 2005) (summarizing authority "that extraterritorial application of § 1782 would not be in keeping with the aims of the statute, and indeed that documents held outside the United States are beyond the statute's intended reach.")

Mr. Velasco's Motion to Quash, and finds Mr. Velasco should pay HT's fees in an amount to be determined at a later date. Dkt. 11, 12.

## EVENTS SUBSEQUNT TO THE AUGUST 28, 2015 ORDER

Shortly after the August 28, 2015 order was entered Mr. Velasco received confirmation that he was also the target of a criminal investigation in Italy. The criminal investigation was launched in May 2015 in response to a request for prosecution submitted to Italian authorities by the CEO of HT. Ex. A (Declaration by C. Blengino) ¶ 1. Mr. Carlo Blengino, an Italian criminal attorney, was recently appointed to represent Mr. Velasco in the Italian criminal investigation. Ex. A ¶ 1. Mr. Velasco's Italian criminal attorney will soon be meeting with the Public Prosecutor to obtain more information about the investigation. Ex. A ¶ 3.

Mr. Velasco was also recently able to find civil counsel in Italy to help him pursue debts owed to him by HT. Ex. B (Affidavit from A. Cavalloni). Mr. Velasco's Italian civil attorney has now lodged an application with the Court of Milan, demanding payment for a debt of $34,704.58 that HT owes to Mr. Velasco. Ex. B at 2. Attorney Cavalloni may also be able to assist Mr. Velasco in responding to HT's breach of contract action in Italy, which as Ms. Cavalloni explains rests on a non-competition clause that is not valid under Italian law. *Id*.

After reviewing the August 28, 2015 decision and speaking to Mr. Velasco's newly-appointed criminal counsel undersigned counsel reached out to counsel for HT to discuss Mr. Velasco's options. Counsel for Mr. Velasco asked if HT would agree to stay civil discovery to permit given the ongoing criminal investigation. Counsel for Mr. Velasco then asked if HT would at least give Mr. Velasco a chance to meaningfully consult with criminal counsel in Italy before litigating this issue. HT rejected that request as well.

Mr. Velasco now respectfully submits the objections below to the Magistrate's August 28, 2015 decision. In the alternative, the additional information presented in the attached affidavits supports reconsideration of the August 28, 2015 decision. Mr. Velasco also seeks an immediate stay of discovery in the United States to permit the court to rule on Mr. Velasco's objections and so that Mr. Velasco is not forced to decide how to balance his criminal and civil litigation risks before he has even had a chance to get meaningful guidance from criminal counsel in Italy.

## FACTUAL BACKGROUND

This dispute arises from a consulting agreement that Mr. Velasco signed with HT in March 2012. Dkt. 3-1 at 32-37 (HT Consulting Agreement). The agreement, which was drafted by HT, states that it is governed by Italian law, and requires disputes regarding the agreement to be brought in the Court of Milan. *Id.* at 36.

### A.   HT is in the Business of Hacking

In its application for discovery pursuant to § 1782 HT described itself as an Italian company that "provides consultancy and management services for information technology security." Ex. 3-1 (HT Application) at 3. That is a euphemistic description of HT's business.

HT stand for Hacking Team. Hacking Team—HT—sells tools that allow users to hack into computers, cell phones, and other devices, without detection.[2] Those tools can be used to monitor people in alarming detail. HT's tools can be used, for example, to hijack a cell phone so that it takes photographs without the user's knowledge and transmits those photographs to others.[3]

HT told the public they were "ethical" hackers, who would only sell hacking tools to

---

[2]*See*, *e.g.*, http://fortune.com/2015/07/16/governments-used-spy-software/ (describing the software sold by HT).

[3] *See*, http://www.bbc.com/news/technology-33772261 (explaining Hacking Team software can be used to secretly record and photograph smartphone users).

government agencies for legitimate law enforcement purposes. Like many things HT says, that was

not the full truth. In fact, HT sold dangerous hacking tools to some of the most repressive regimes in

the world.[4] In particular, the Senate Judiciary Committee is now investigating whether HT was selling

hacking tools to the Sudan, in violation of United States law.[5]

### B.  Mr. Velasco's Relationship with HT

HT held itself out as a victim in its application for discovery pursuant to § 1782 but that

portrayal flips reality on its head. HT is a large company with a reputation for aggressive tactics.[6] The

CEO of HT is prone to quoting Mussolini slogans and is rightfully feared by many.[7]

Mr. Velasco, in contrast, is an unassuming 51 year old man with a modest life in Annapolis,

Maryland. Mr. Velasco was the first person in his family to receive any higher education—he

obtained an associate's degree in electronics from DeVry University in 1984, at the age of 20. After

years of working for technology companies in 2006 Mr. Velasco decided to start his own small

company to market IT solutions to government agencies.

---

[4] *See*, http://www.dailydot.com/politics/hacking-team-david-vincenzetti-cypherpunk/ (explaining "Hacking Team, [is] an Italian technology company notorious for selling aggressive cyberweapons to many governments, including those that target journalists, human rights activists, and ordinary citizens.")

[5] *See*, http://thehill.com/policy/cybersecurity/248264-did-the-fbi-have-illegal-ties-to-a-controversial-hacking-firm (describing questions from the Judiciary Committee after learning that HT made deals with "oppressive governments across the Middle East, Africa and Eastern Europe" including Sudan.)

[6]  See, http://fortune.com/2015/07/16/governments-used-spy-software/  (describing the "brazen attitude" of HT's CEO, who boasted 'Definitely, we are notorious, probably the most notorious name in the offensive security market. This is great.'")

[7] "[T]he Hacking Team CEO, who signs some of his emails with the fascist-era slogan "Boia chi molla" (Never surrender), emerges as a contradictory figure who spent his youth working to protect online privacy and ended up helping oppressive regimes -- in Sudan, Ethiopia and Saudi Arabia -- to violate the privacy of their own citizens." http://www.pcworld.com/article/2948312/hacking-team-ceo-insists-tools-were-not-compromised.html.

Mr. Velasco signed a consulting agreement with HT in March 2012 at HT's request. That arrangement went well initially. HT paid Mr. Velasco as promised, and reimbursed him for HT-related expenses. The agreement was renewed in March 2013, and again in March 2014.

But in 2014, things changed. HT stopped paying Mr. Velasco in September 2014.  They terminated their consulting agreement with Mr. Velasco on March 9, 2015.  Dkt. 3-2 ¶ 16.  HT never paid Mr. Velasco for the work he did for HT from August 2014 through March 2015. They also never reimbursed him for the rent he paid on behalf of HT from August 2014 to March 2015 or for travel expenses he incurred on behalf of HT during that time period. Ex. B (Cavalloni Declaration) (discussing an application seeking payment of $34,704.58 which HT owes to Mr. Velasco).

### C.  HT's Suit Against Mr. Velsaco is Part of HT's Larger Campaign Against its Former Employees

It is now clear that HT intended to terminate Mr. Velasco's contract long before March 2015, but they hid that fact from him while they engaged in an elaborate sting operation to try to gather evidence regarding Mr. Velasco's work with a number of former HT employees.[8]

HT hired Kroll, an international investigations firm, to conduct an undercover operation against Mr. Velasco in late 2014.[9] At HT's direction, Kroll approached Mr. Velasco to ask him about buying HT products. Mr. Velasco told Kroll that HT products were the best in the business, but explained he could not sell HT products to Kroll because HT products were only supposed to be sold to governments, not to private parties. *Id*. Kroll continued to hound Mr. Velasco to ask him about

---

[8] *See*, *e.g*, http://arstechnica.co.uk/security/2015/07/italian-prosecutors-investigate-former-hacking-team-employees-for-role-in-hack/ (describing HT's legal attacks against former employees).

[9] See http://www.forbes.com/sites/thomasbrewster/2015/07/15/hacking-team-ex-employers-legal-fight/ and http://arstechnica.com/security/2015/07/massive-leak-reveals-hacking-teams-most-private-moments-in-messy-detail/ and links cited therein.

selling them products. *Id.* At Kroll's prompting he began to discuss defensive tools created by other companies that could be sold to Kroll. *Id.*

That was what HT wanted. Once they had that information they cancelled Mr. Velasco's consulting agreement without paying him for his work during or reimbursing funds he spent on behalf of HT during the final six months of the contract. They then brought suit against him in Italy, and, we now know, also convinced Italian authorities to commence a criminal investigation against him.

Mr. Velasco now finds himself in a dangerous and frightening situation. HT is demanding he submit to a deposition in the United States that will be given to law enforcement in Italy and may also be used to pursue criminal charges against him in the United States. Mr. Velasco thankfully recently found *pro bono* criminal counsel in Italy, and his new attorney will be meeting with Italian authorities soon to learn more about the investigation. Ex. A ¶ 3.

**ARGUMENT**

**I.       STANDARD FOR REVIEW**

The standard for review of Mr. Velasco's objections turns on whether the motions decided were dispositive of the matter. While most discovery-related motions are considered non-dispositive matters than can be referred to a magistrate under Rule 72(a), a motion to enforce a foreign subpoena, is "One situation related to discovery [that] does qualify as dispositive" because "The sole purpose of the proceeding is to obtain discovery, and accordingly a motion to compel such discovery is a final, dispositive matter." Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3068.2 (2d ed.); *see also*, *In re Admin. Subpoena Blue Cross Blue Shield of Massachusetts, Inc.*, 400 F. Supp. 2d 386, 389 (D. Mass. 2005) (when "[a] motion to compel production of documents pursuant to a subpoena is the entire proceeding before this Court….the Court will treat the

motion as dispositive and will review the magistrate judge's findings *de novo* under 28 U.S.C. § 636(b)(1)(C).") (collecting authority).

A number of courts have held that when a Magistrate considers a motion to compel in this unusual setting the Magistrate should thus issue findings and recommendations pursuant to Rule 72(b) instead of issuing an order under Rule 72(a). *See*, *e.g.*, *Luppino v. Mercedes-Benz Fin. Servs. USA, LLC*, No. 13-50212, 2013 WL 1844075, at *3 (E.D. Mich. Apr. 11, 2013) (since "Plaintiffs' motion to compel production of documents and a witness pursuant to the 2013 Subpoena is the entire proceeding before this Court….the Court will treat the motion as dispositive and proceed by a report and recommendation."); *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, No. 08-347 ARR MDG, 2010 WL 2219343, at *1 (E.D.N.Y. Feb. 5, 2010) ("motions to quash a subpoena brought in a proceeding before a court other than the one determining the action are typically treated as dispositive matters under 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)…. Thus, even though the motions are referred to me for decision, I am setting forth my findings as a report and recommendation."); *EEOC v. Schwan's Home Serv.*, 707 F.Supp.2d 980, 987 (D.Minn.2010) ("[A]n application to enforce an administrative subpoena *duces tecum*, where there is no pending underlying action before the Court, is generally a dispositive matter, and therefore, when a Magistrate Judge considers such an application, the district court reviews the Magistrate Judge's determinations *de novo.*" ).

Here, as in the cases discussed above, resolution of the motion to compel, or in the alternative quash, HT's subpoena is dispositive of the entire matter before the Court. As a result, Mr. Velasco respectfully submits that his objections to the the August 28, 2015 should be reviewed *de novo* pursuant to Rule 72(b).

Mr. Velasco also submits that the new information provided in the attached affidavits supports a motion for reconsideration.  Mr. Velasco did not learn of the criminal proceedings until very recently.  He could not present information on the impact of the criminal investigation prior to the August 28, 2015 decision. He also lacked access to an Italian attorney to provide more detailed information regarding civil discovery practice in the Court of Milan. The new information Mr. Velasco has recently obtained from counsel in Italy justifies reconsideration of the August 28, 2015 decision under Fed. R. Civ. P. 60, which permits the court to grant relief from a final order when justified.

Finally Mr. Velasco's request for an immediate stay pending a resolution of the criminal investigation should be granted pursuant to a long line of authority staying civil proceedings pending the resolution of closely-related criminal proceedings "when the interests of justice" require it. See *United States v. Kordel,* 397 U.S. 1, 12 n. 27 (1970).

## II.    OBJECTIONS TO THE MAGISTRATE'S DECISION

Mr. Velasco objects to the Magistrate's decision to grant HT's Motion to Compel and deny his motion to quash, as well as the Magistrate's decision to award fees to HT.

### A.  HT Should Not Have Been Granted Authority to Seek Discovery Pursuant to 28 U.S.C. § 1782

A request for discovery pursuant to 28 U.S.C. § 1782 should be granted only if the discovery furthers the twin aims of §1782—"providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004).  Courts must consider a number of factors before granting an application for discovery pursuant to § 1782 to ensure that granting the requested discovery will advance the goals of § 1782.

Factors that must be considered before permitting discovery pursuant to § 1782 include: "(a) whether 'the person from whom discovery is sought is a participant in the foreign proceeding'; (b) 'the nature of the foreign tribunal'; (c) 'the character of the proceedings underway abroad'; (d) 'the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (e) whether the 'request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (f) the scope of discovery.'" Dkt. 11 at 12 (quoting *Intel*, 542 U.S. at 264-65).

### 1.  Mr. Velasco is a Party to the Foreign Proceeding.

There is no dispute that the first factor cited by the Magistrate weighs against permitting HT to undertake the discovery it seeks.

Mr. Velasco is a party to the Italian proceedings. An order providing discovery under § 1782 is less likely to be necessary when discovery is sought against a party in a foreign proceeding because the "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264.  In fact, in the case *In Matter of Application of Leret*, 51 F. Supp. 3d 66 (D.D.C. 2014) this court recently upheld the denial of a request for discovery based almost entirely on this factor alone. *Leret*, 51 F. Supp. 3d at 71 (upholding denial of § 1782 discovery when discovery was sought against a party in the foreign proceedings who had offered to consent to discovery orders from the foreign tribunal).[10]

Consistent with *Leret*, counsel for Mr. Velasco proposed that both parties could agree to obey any discovery request authorized by the Italian court. Dkt. 4-1, Ex. H (May 22, 2015 letter

---

[10] The August 28, 2015 Memorandum Opinion cites *Leret* in its discussion of this factor, but reverses the holding in *Leret*, describing it as "upholding magistrate judge's grant of 28 U.S.C. § 1782(a) request primarily because the commanded party was a party to the foreign litigation…" Dkt. 11 at 12.

from counsel for Mr. Velasco) at 46. As shown by *Leret*, this alone can resolve the need for an

order pursuant to § 1782. Here, the Magistrate agreed that this factor weighs against enforcing

HT's subpoena but, in stark contrast to *Leret*—where this factor alone was determinative—the

Magistrate gave little weight to the factor.

### 2. The Nature of the Foreign Tribunal

The Magistrate next considered the nature of the foreign tribunal. Dkt. 11 at 13. The

Magistrate explained that when "the party seeking the discovery had options in selecting the

forum for the foreign proceeding" then this factor weighs against permitting discovery pursuant

to §1782. *Id*. This factor is important to ensure parties do not game they system by forum

shopping, bringing claims in the forum where the substantive law favors them, and then seeking

discovery beyond what is allowed in that forum by invoking the assistance of United States

courts.

Here, the Magistrate erroneously found that this factor weighed in favor of discovery,

because the consulting agreement at issue contains an Italian forum choice provision. But HT is

the party that wanted this suit to be brought in Italy. HT drafted the forum selection clause,

which is massively advantageous to HT, and they could choose to waive it.

HT knows that Mr. Velasco would agree in a heartbeat to have this dispute resolved in a

United States court. Counsel for Mr. Velasco said that explicitly during the parties meet and

confer call on May 21, 2015. But HT will never agree to that, because if the suit is moved to the

United States the playing field will be leveled.

As things stand now, HT can seek discovery against Mr. Velasco, while Mr. Velasco can

get nothing from HT. Mr. Velasco cannot simply seek his own order under § 1782 to obtain

discovery from HT because HT's documents and witnesses are all located in Italy.  Section 1782

cannot be used to obtain evidence held outside of the United States. *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 47-48 (D.D.C. 2005) (summarizing authority "that extraterritorial application of § 1782 would not be in keeping with the aims of the statute, and indeed that documents held outside the United States are beyond the statute's intended reach.") Mr. Velasco could also much more easily present his own counterclaims for significant damages if this litigation were moved to the United States.

HT had Mr. Velasco sign an agreement requiring disputes be resolved in Milan, Italy because that forum is favorable to HT. If HT insists on bringing suits in Italy they should be willing to be governed by Italian discovery law, instead of seeking to evade Italian discovery restrictions when it suits them by invoking United States courts to help them pursue discovery.

### 3.    Character of the Foreign Proceedings

The August 28, 2015 decision also improperly concluded that the character of the Italian proceedings favored granting discovery. Here, the Petitioners have jumped the gun and rushed to seek discovery in the United States before it would ever be permitted in Italy. Dkt. 4 at 7-8. As explained in *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 54 (D.D.C. 2005), courts should be "wary of granting discovery under § 1782 when it appears that the party seeking discovery may be using the United States statutes and federal court system to 'jump the gun' on discovery in the underlying foreign suit." *Norex*, 384 F. Supp. 2d at 54.

Magistrate Kay cited *Norex* in his discussion, Dkt. 11 at 13-14, but he did not apply it to the facts at issue. Instead, Magistrate Kay compared this case to *In re Application of Caratube Int'l Oil Co., LLP,* 730 F. Supp. 2d 101, 106 (D.D.C. 2010), where this court denied a request for discovery under § 1782 because the request was made a year after the foreign tribunal set a detailed schedule for the arbitration.  The facts here are far more analogous to *Norex* then the

*Caratube* though notably both cases reach the same result—denial of the requested discovery. In fact, the specific considerations that made discovery improper in *Caratube* likewise strongly support denial of the discovery sought by HT. Here, as in *Caratube*, the party seeking discovery sought an order pursuant to §1782 before discussing the requested discovery with the opposing party or with the foreign tribunal. That factor weighed against discovery in *Caratube*, and it does here as well. *Caratube*, 730 F. Supp. 2d at 106 (refusing to permit discovery when prior to the petition "[t]here was no discussion between the parties concerning the need or opportunity for non-party discovery, and neither party had made any written submission [to the Tribunal] requesting the opportunity for non-party discovery.")

In considering this factor, the Magistrate also incorrectly stated that because the proceedings are at an early stage, Mr. Velasco would "also have sufficient time to seek discovery under 28 U.S.C. § 1782(a) for use in the Italian proceeding if he desires." Dkt. 11 at 14.  But in fact § 1782 cannot be used to obtain discovery located outside the United States, where all of HT's documents and witnesses are now safely protected. *Norex*, 384 F. Supp. 2d at 47-48 (D.D.C. 2005) ("extraterritorial application of § 1782 would not be in keeping with the aims of the statute, and indeed that documents held outside the United States are beyond the statute's intended reach.")

### 4.   Receptivity of the Foreign Tribunal to U.S. Judicial Assistance

Mr. Velasco has presented substantial support for his position that Italian courts are not receptive to judicial assistance from the United States. Dkt. 4 at 6-7.  Among other things, the government of Italy "has informed the Hague Conference for Private International Law that *it will not grant requests for pre-trial discovery of documents,*" Dkt. 4-1, Ex. J, because Italian law does not permit that sort of discovery. Mr. Velasco also presented authoritative evidence that Italian

courts do not allow depositions to be introduced as evidence. Dkt. 3-6 (May 15, 2015 letter from counsel for Mr. Velasco) at 3.

Magistrate Kay discounted this authority, holding that this factor still favored granting discovery to HT because Mr. Velasco did not present "authoritative proof that a foreign tribunal would reject the evidence obtained." Dkt. 11 at 15. Mr. Velasco objects to this standard. The authority cited by Mr. Velasco is plainly relevant to assessing if the discovery sought by HT advances the twin purposes of § 1782. In any event, Mr. Velasco now has additional authoritative support for his position that the Court in Milan would not accept the evidence sought by HT.

The Declaration submitted by Mr. Velasco's newly-appointed criminal attorney in Italy explains that the evidence sought by HT's subpoena is inadmissible under Italian law "and given the pending criminal proceedings….the order [requiring discovery] is in breach of the fundamental rights established by the Italian Constitution." Ex. A ¶ 8.

For these reasons, Mr. Velasco strongly objects to the Magistrate's conclusion that the receptivity of the court in Milan to the evidence sought is a factor that favors permitting HT to conduct discovery pursuant to §1782.

**5.   Circumvention of Foreign Proof-Gathering Restrictions and Policies**

A request for discovery under Section § 1782 must be considered with care to ensure that the party seeking discovery is not seeking to circumvent foreign discovery restrictions. That is clearly what is happening here. HT is not willing to ask the court in Milan to define the parties' discovery obligations because HT knows it is seeking discovery in the United States that it could not get in Italy.

Any remaining questions on that point should be resolved by the affidavit submitted by Mr. Blengino, who explains that the discovery order sought by HT would "circumvent the procedures

regarding evidence in Italy that are in place in order to provide safeguards for the defendant in civil proceedings and, above all, circumvent the constitutional guarantees enjoyed by a person subject to [criminal] investigation" Ex. A ¶11.

This factor thus again supports denying HT's requested discovery.

### 6. Other Factors Relied Upon by The Magistrate As Support For Permitting Discovery Under § 1782.

The August 28, 2015 decision last addresses Mr. Velasco's *pro se* efforts to seek an extension to his subpoena response deadline. Dkt. 11 at 20-21.

Magistrate Kay stated that Mr. Velasco "agreed to appear at his deposition, retained counsel, and ultimately refused to be deposed." Dkt. 20 at 10.  Magistrate Kay found that Mr. Velasco's "change in position is unfair to Petitioner and a waste of Petitioner's time and resources."  Dkt. 11 at 21.

Undersigned counsel respectfully but vehemently disagrees with the Magistrate's characterization of that exchange, and its implications for discovery under § 1782. The communications at issue took place on May 5 and 6, 2015, less than two weeks after Mr. Velasco was served with the subpoena. Dkt. 3-11 (May 5-6, 2015 email exchange between Mr. Velasco and counsel for HT).

Mr. Velasco was unexpectedly served with a subpoena without any prior notice.[11]  He was given less than three weeks to respond. He sought additional time from HT for his response *pro se* while he was looking for counsel. He then retained counsel, who clarified Mr. Velasco's position on May 15, 2015.

---

[11] The absence of prior notice is arguably a violation of Fed. R. Civ. P. 45(a)(4), which requires the party issuing a subpoena commanding the production of documents to provide the opposing party with a copy of the subpoena before it is served.

Once Mr. Velasco had time to review HT's subpoena with counsel he had a right to present objections. Mr. Velasco had no chance to object to HT's application for discovery while it was pending in the District of Maryland because HT filed the application *ex parte*. While courts have generally (though not always) allowed *ex parte* applications under § 1782(a), they do so subject to the assumption that the party commanded to respond to discovery will have the chance to challenge the order once discovery is served. *See*, *e.g*, 3 Litigation of International Disputes in U.S. Courts § 17:46 ("The majority approach appears to be that initially a § 1782 order may issue *ex parte*, duly noting that the burdened party would have an opportunity to challenge the order.") (collecting authority).

Numerous courts have explained that "while § 1782(a) does not require that notice and an opportunity to be heard be given to the person from whom the evidence is being sought prior to the court issuing an order compelling the evidence, the person who is the subject of the order has the right to contest it after it is issued." *In re Kegel*, 67 F. Supp. 3d 1054, 1057 (D.N.D. 2014). See also, *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ( "The respondent's due process rights are not violated [by granting an *ex parte* § 1782 application] because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)."); *In re Republic of Ecuador*, No. C-10-80225, 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010) ("*ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.") (quoting *In re Letter of Request from Supreme Court*, 138 F.R.D. 27, 32 n. 6 (S.D.N.Y.1991)).

Undersigned counsel respectfully objects to the conclusion that Mr. Velasco's "change in position is unfair to the Petitioner and a waste of Petitioner's time and resources" (Dkt. 11 at 21) given

this context. In truth, all of this time and effort could have been avoided if HT had simply given Mr.

Velasco notice and an opportunity to respond when they first moved for an order permitting discovery

under § 1782.

For these reasons, Mr. Velasco respectfully objects to the Magistrate's conclusion that the

discovery sought by HT should be permitted under Section 1782.

### B.   Mr. Velasco Did Not Violate Local Rule 7(m)

Mr. Velasco also objects to the Magistrate's finding that his cross-motion to quash should be

disregarded because it did not include a statement pursuant to Local Rule 7(m). That conclusion turns

Local Rule 7(m) on its head.

> The purpose of [Local Rule 7(m)] is to facilitate the informal resolution of
> disputes without court intervention, or "at least to reduce or narrow the issues
> the Court will consider." *United States ex rel. Pogue v. Diabetes Treatment
> Centers of America,* 235 F.R.D. 521, 529 (D.D.C. June 2, 2006). Because the
> Rule seeks to promote actual resolution of nondispositive disputes*, its focus is
> on substance, not form*, and thus "[t]he obligation to confer may not be satisfied
> by perfunctory action, but requires a good faith effort to resolve the
> nondispositive disputes that occur in the course of litigation." *Id.*

*U.S. ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52

(D.D.C. 2006) *aff'd,* 530 F.3d 980 (D.C. Cir. 2008) (emphasis added).

The Magistrate's conclusions regarding the parties' efforts to resolve this dispute reward HT

for ignoring the substance of Rule 7(m) while penalizing Mr. Velasco for trying repeatedly to reach a

reasonable agreement, and then when no hope remained filing a motion to quash as an alternative

means of denying HT's already-pending motion to compel.

Initially HT would only agree to meet and confer with counsel for Mr. Velasco 30 minutes

before Mr. Velasco's deposition. Dkt. 3-7 (May 19, 2015 letter from counsel for HT) (stating "I

suggest we 'meet and confer' a half hour before his [Mr. Velasco's] deposition commences.") This

correspondence suggests that HT "had already assumed what the outcome of such a discussion

would be and viewed a conference as unnecessary." *U.S. ex rel. K & R Ltd. P'ship v. Massachusetts Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52 (D.D.C. 2006). When a party "merely genuflect[s] to the letter of the Rule instead of trying in good faith to achieve its objectives" it does not comply with Rule 7(m). *Id*.

In contrast, counsel for Mr. Velasco tried repeatedly to propose alternative that were fair to both parties, consistent with case law regarding the aims of Section 1782, and would avoid the need for intervention by this court. Even after HT filed their motion to compel Mr. Velasco continued to plead for a more sensible resolution. When counsel for Mr. Velasco realized that HT's initial motion to compel was based on a false premise she wrote to counsel for HT to again propose that HT at least seek a discovery order from the Italian court before moving to compel in the United States  Dkt. 4-1, Ex. I (May 27, 2015 letter from counsel for Mr. Velasco) at 42. HT ignored that suggestion, and instead filed an amended motion to compel without any further discussions with counsel for Mr. Velasco.

Mr. Velasco then timely opposed HT's amended motion to compel, and filed a cross-motion to quash at the same time. The motion to quash did not have a new meet-and-confer statement but it sought the exact same relief that Mr. Velasco was requesting by opposing HT's motion to compel. In any event, Mr. Velasco's memorandum in support of his motion to quash attached the correspondence cited above, which leaves no doubt as to HT's position on Mr. Velasco's motion. See, *Wultz v. Bank of China, Ltd*, 304 F.R.D. 38, 42 (D.D.C. 2014) (excusing absence of meet and confer statement when the parties had in fact conferred); *Escamilla v. Nuyen*, No. 14-CV-00852-AK, 2015 WL 4245868, at *4 (D.D.C. July 14, 2015) (refusing to strike motion despite the absence of a meet and confer statement when correspondence showed the moving party had in fact made efforts to confer in good faith).

Mr. Velasco throughout has sought to resolve disputes without court intervention, while counsel for HT responded with threats and arbitrary deadlines. Holding Mr. Velasco in violation of Local Rule 7(m) will undermine not advance the goals of that rule.

### C.  Mr. Velasco's Pro Se Objections were Properly Made

Mr. Velasco also objects strongly to the Magistrate's conclusion that his *pro se* objections to the subpoena were improper because they were not signed or sufficiently explained as required by Fed. R. Civ. P. 26(g)(1).  Dkt. 11 at 19, n. 17.

Mr. Velasco was served with a Rule 45 subpoena. Rule 45 does not require any specific format for objections. Mr. Velasco—again responding *pro se*— read the rule on the subpoena form and then followed the rule as written.  Mr. Velasco objects to be penalized for failing to comply with the formalities set forth in Rule 26 when he was responding *pro se* to a subpoena issued under Rule 45.

### D.  Mr. Velasco's Motion to Quash Was Timely and Well Supported

Mr. Velasco similarly objects to the Magistrate's finding that his cross-motion to quash was untimely.  Mr. Velasco was making a good faith effort to resolve discovery issues when HT rushed to court with its motion to compel.

HT told Mr. Velasco that he had to comply with the subpoena by May 21, 2015, but they would not meet and confer with counsel for Mr. Velasco prior to May 21, 2015.  On May 22, 2015, while counsel for Mr. Velasco was drafting a letter to follow up on the May 21, 2015 meet and confer, counsel for HT went ahead and filed a motion to compel. There is nothing improper in Mr. Velasco then filing a motion to quash along with his opposition to the motion to compel—which took place somewhat later than expected only because HT filed an amended motion to compel after counsel for

Mr. Velasco, in an effort at professional courtesy, reached out to HT to tell them the initial motion was false.

Mr. Velasco should not be penalized for making meaningful efforts to reach an agreement with HT while they skipped that step and were drafting a motion to compel. *See*, *e.g.*, *In re Denture Cream Products Liab. Litig.*, 292 F.R.D. 120, 124 (D.D.C. 2013) ("Although the Sarfez Entities did not object to the defendants' subpoenas within the allowed time frame [] their counsel and defendants' counsel 'were in contact…Accordingly, the Court will consider the Sarfez Entities' objections to the legal basis for the subpoenas."); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 52 (S.D.N.Y. 1996) ( "[s]uch a strict interpretation of the Rule would discourage informal dispute resolution among parties who cause issuance of subpoenas *duces tecum* and … would work against the efficient administration of justice.") (quotations omitted).

### E.   Mr. Velasco Should Not Be Required to Pay HT's Fees

Finally, Mr. Velasco objects to the Magistrate's apparent decision to award fees against Mr. Velasco pursuant to Fed. R. Civ. P. 37(a)(5). Magistrate Kay appears to have concluded that fees should be awarded to HT, though he has not yet determined in what amount. Dkt. 11 at 26 ("Because Petitioner's Motion to Compel is granted in part and denied in part, the Court may award Petitioner expenses reasonably incurred in making the Motion, including attorneys' fees.")

As an initial matter, Rule 37 generally does not apply to a motion to compel a subpoena response. See, *In re Exxon Valdez*, 142 F.R.D. 380, 385 (D.D.C. 1992) ("Rule 37 by its terms applies only to a motion to compel production from a party under Rule 34.…The only sanction provision in Rule 45 is the contempt provision, which has no application here, where API timely objected to the subpoena.")

In any event, fees cannot not be awarded under Rule 37 when the party's objections are substantially justified. Fed.R.Civ.P. 37(a)(5)(C) (the court "must not order this payment if…the opposing party's nondisclosure, response, or objection was substantially justified.")

As this court has explained in the past:

> [A] party meets the "substantially justified" standard when there is a "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the motion. *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). A party's actions are substantially justified if the issue presented is one that "could engender a responsible difference of opinion among conscientious, diligent[,] but reasonable advocates." *Athridge v. Aetna Cas. & Sur. Co.,* 184 F.R.D. 200, 205 (D.D.C.1998) (citations omitted).

*Peterson v. Hantman*, 227 F.R.D. 13, 16 (D.D.C. 2005).

Here, Mr. Velasco raised entirely legitimate objections based on complex issues regarding the factors to be considered when granting discovery pursuant to §1782. His objections are substantially justified. There is no basis for punishing Mr. Velasco for raising objections even if his objections are denied given this context.

## II.   DISCOVERY SHOULD BE STAYED

Mr. Velasco recently learned that he is facing a criminal investigation in Italy, which was spearheaded by HT. Ex. A ¶ 2. Mr. Velasco's request for a stay pending a resolution of the criminal investigation should be granted pursuant to a long line of authority staying civil proceedings pending the resolution of closely-related criminal proceedings "when the interests of justice" require it. See *United States v. Kordel,* 397 U.S. 1, 12 n. 27 (1970).

The existence of parallel criminal and civil proceedings further complicates Mr. Velasco's situation. He now must obtain advice from criminal counsel in Italy to understand his rights under Italian law, and must also determine whether to assert his Fifth Amendment rights here, since he may also be under investigation in the United States.

## <u>CONCLUSION</u>

For the forgoing reasons, Mr. Velasco respectfully objects to the Magistrate's August 28, 2015 findings, and requests a stay of discovery in light of new information regarding the criminal investigation against him that is now underway in Italy.


Respectfully submitted,

___/s/_____
Rebecca S. LeGrand (DC Bar No. 493918)
KAISER, LEGRAND & DILLON PLLC
1401 K Street NW, Suite 600
Washington, DC 20005
rlegrand@kaiserlegrand.com
(202) 640-2850 (phone)
(202) 280-1034 (facsimile)

September 11, 2015

**CERTIFICATION PURSUANT TO L.Cv.R. 7(m)**

Undersigned counsel spoke with counsel for HT on September 4, 2015 to discuss Mr. Velasco's objections to the Magistrate's August 25, 2015 decision and the need for a stay based on newly-obtained information regarding a criminal investigation against Mr. Velasco.

Counsel for Mr. Velasco asked Counsel for HT if they would agree not to seek fees against Mr. Velasco and agree to stay discovery to allow Mr. Velasco to address the criminal investigation against him in Italy. Counsel for HT opposed any alteration to the August 25, 2015 order and rejected Mr. Velasco's request for even a short stay to permit Mr. Velasco to consult with Italian criminal counsel.

___/s/_____
Rebecca LeGrand
*Counsel for Respondent Alex Velasco*